UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
BRICKLAYERS INSURANCE AND
WELFARE FUND, BRICKLAYERS PENSION
FUND, BRICKLAYERS SUPPLEMENTAL
ANNUITY FUND, BRICKLAYERS AND
TROWEL TRADES INTERNATIONAL
PENSION FUND, NEW YORK CITY AND
LONG ISLAND JOINT APPRENTICESHIP
AND TRAINING FUND, INTERNATIONAL
MASONRY INSTITUTE, and JEREMIAH
SULLIVAN JR., in his fiduciary capacity as
Administrator and Chairman of Trustees,
BRICKLAYERS LOCAL 1,
INTERNATIONAL UNION OF
BRICKLAYERS AND ALLIED CRAFT
WORKERS, and BRICKLAYERS LABOR
MANAGEMENT COMMITTEE,

                    Plaintiffs,                    **REPORT & RECOMMENDATION**
                                                     **19 CV 7094 (DLI)(LB)**

      -against-

INNISS CONSTRUCTION, INC.,
HUDSON INSURANCE COMPANY, and
ANDERSON INNISS,

                    Defendants.
-----------------------------------------------------------X

**BLOOM, United States Magistrate Judge:**

     Plaintiffs Bricklayers Insurance and Welfare Fund ("Welfare Fund"), Bricklayers Pension

Fund ("Pension Fund"), Bricklayers Supplemental Annuity Fund ("Annuity Fund"), Bricklayers

and Trowel Trades International Pension Fund ("IPF"), New York City and Long Island Joint

Apprenticeship and Training Fund ("JATC"), International Masonry Institute ("IMI")

(collectively, the "ERISA Funds"), Jeremiah Sullivan Jr., in his fiduciary capacity as

Administrator and Chairman of Trustees, Bricklayers Local 1, International Union of Bricklayers

and Allied Craft Workers ("Local 1"), and Bricklayers Labor Management Committee ("LMC")

(collectively, the "other funds") bring this action against defendants Inniss Construction, Inc.,

1

Hudson Insurance Company ("Hudson"), and Anderson Inniss to enforce provisions of the Employee Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1145, 1104, 1109, and the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, and for a state law conversion claim. Despite proper service of the summons and complaint, defendants Inniss Construction, Inc. and Anderson Inniss have failed to plead or otherwise defend this action. Plaintiffs now move for a default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. ECF No. 21. The Honorable Dora Irizarry referred plaintiffs' motion for a default judgment to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that plaintiffs' motion for a default judgment should be granted.

## BACKGROUND[1]

The Welfare Fund, Pension Fund, Annuity Fund, the IPF and the IMI are all "employee benefit plans," "multiemployer plans" and a "fiduciary" as that those terms are defined by ERISA. ECF No. 1 ("Compl.") ¶ 6 (citing 29 U.S.C. §§ 1002(3), (37), (21)(A)). Plaintiff Jeremiah Sullivan[2] was the Chairman of Trustees, an unpaid administrator and fiduciary of the Pension, Annuity, and Welfare Funds and the JATC. Id. ¶ 7 He is also trustee of the IMI and authorized to bring this action on behalf of the Funds. Id. As the president of Local 1, Sullivan is authorized to bring suit seeking wage assignments that employers of Local 1 bricklayers have

---

[1] The facts are drawn from the uncontested allegations in plaintiffs' complaint, ECF No. 1, as well as documents incorporated by reference, and are taken as true for the purpose of deciding this motion. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 108 (2d Cir. 1997) (deeming all well-pleaded allegations in a complaint admitted on a motion for a default judgment).

[2] Plaintiffs request leave to amend the case caption to replace Jeremiah Sullivan with Jack Argila who assumed Mr. Argila's position as President of Local 1, Trust Administrator and Chairman of Trustees. See Pl.'s Mot. 2 n.2, ECF No. 21-1. As this appears to be a mere technicality, the Court recommends that leave be granted and that the caption be amended to reflect Mr. Argila's assumption of Mr. Sullivan's position. See Danuri Tex Co., Ltd. v. Yoco Inc., No. 19-Civ-9187(NRB), 2020 WL 4735190, at *1 (S.D.N.Y. Aug. 14, 2020) (granting motion to amend caption to reflect plaintiff's new corporate name and recognizing this request to be a mere technicality).

failed to remit to the union and its parent organization, the International Union of Bricklayers and Allied Craft Workers ("I.U."). Id. Local 1 is a labor organization covered by Section 301 of the LMRA. Id. ¶ 8 (citing 29 U.S.C. § 185). Inniss Construction is an employer engaged in business in New York and Anderson Innis is its owner and general manager. Id. ¶¶ 10-11. Inniss Construction is bound by a collective bargaining agreement ("CBA") covering Local 1 bricklayers and, under the terms of the CBA, Innis Construction must contribute, at stated rates, to the Pension Fund, Annuity Fund, IPF, Welfare Fund, JATC, and IMI. Id. ¶ 13. The CBA also requires Innis Construction to remit after tax deductions from employee wages to both the Vacation Fund (which is part of the Welfare Fund) and as dues owed to Local 1 and I.U. Id. ¶¶ 14-15. Plaintiffs allege that Innis Construction and Anderson Innis failed to make the required contributions to the ERISA and other funds from July 2017 through May 2019. Id. ¶ 16. Defendant Hudson Insurance Company furnished a labor and materials bond in connection with Inniss Construction's work on a project called the Schiff House Daycare Renovation at City College of New York. Id. ¶ 17.

## PROCEDURAL HISTORY

Plaintiffs filed their complaint, commencing this action, on December 18, 2019. ECF No. 1. Defendant Hudson Insurance Company was served with the summons and complaint on January 24, 2020, ECF No. 10, and answered on February 5, 2020. ECF No. 7. Defendants Inniss Construction and Anderson Inniss were both served with a summons and the complaint.[3] ECF Nos. 9, 11. Defendants Inniss Construction and Anderson Inniss failed to answer and the Clerk

---

[3] The docket also reflects an attempt at service on defendant Innis Construction, Inc. by leaving the summons and complaint with a person described as the "General Agent" of the corporation at the corporation's address. ECF No. 12. The later service on the company on February 14, 2020 was effected pursuant to N.Y. Bus. Corp. Law § 306 which permits service on the New York Secretary of State. ECF No. 11.

of Court noted their default pursuant to Federal Rule of Civil Procedure 55(a). ECF Nos. 15-16.

Plaintiffs then moved for a default judgment seeking damages against both Inniss Construction

and Anderson Inniss and an order directing Inniss Construction to comply with an audit for its

books and records. Pls.' Mot., ECF No. 21. While the motion for a default judgment was *sub

judice*, plaintiffs reported that they had reached a settlement with defendant Hudson. ECF No.

23. The Court ordered plaintiffs and defendant Hudson to file a stipulation of discontinuance and

marked the motion for a default judgment as withdrawn in light of the settlement. See Electronic

Order dated Dec. 29, 2020. The Court further ordered that any refiled motion for a default

judgment must address the effect of the settlement on plaintiffs' request for relief. Id. Plaintiffs

filed a supplement to their original motion, Suppl. Mot., ECF No. 30. The Court deemed the

motion for a default judgment refiled at that time. See Electronic Order dated Jan. 29, 2021.

## DISCUSSION

### I.    Legal Standard

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a

plaintiff to obtain a default judgment. First, "[w]hen a party against whom judgment for affirmative

relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or

otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a). Second, after a default

has been entered against a defendant, and the defendant fails to appear or move to set aside the

default under Rule 55(c), the Court may, on a plaintiff's motion, enter a default judgment. FED. R.

CIV. P. 55(b)(2).

In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits,"

default judgments are "generally disfavored." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96

4

(2d Cir. 1993). "Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." Finkel v. Universal Elec. Corp., 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013) (citing Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (courts must "supervise default judgments with extreme care to avoid miscarriages of justice")).

On a motion for a default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 108 (2d Cir. 1997). Regardless of the assumption of truth, the Court has a "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). In other words, "[a]fter default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." Id. (internal quotation marks and citation omitted). In evaluating "whether the unchallenged facts constitute a legitimate cause of action," the Court is limited to the four corners of the complaint. The Court is not so restricted in determining damages, which may be calculated based on documentary evidence, affidavits, or evidence gleaned from a hearing on damages. Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citing Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111).

## II.      Liability

### A.  Liability of Inniss Construction

Plaintiffs assert claims under both ERISA and the LMRA against Inniss Construction for unpaid contributions to the ERISA funds and for unremitted dues and contributions to the Other funds. Compl. ¶¶ 18-23.

### 1.  ERISA Funds

ERISA empowers participants in covered employee benefit plans to bring an action for recovery of benefits due under the terms of the plan. 29 U.S.C. § 1132(a)(1). Plans classified as multiemployer plans or intended to provide for health benefits, vacation benefits, and training of employees are covered by ERISA's protections. Id. § 1002(3), (37). ERISA provides that:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

Id. § 1145. Allegations in a complaint that an employer failed to make contributions to ERISA funds as required and failed to honor contractual obligations pursuant to a CBA sufficiently establish the employer's liability. Bricklayers Ins. & Welfare Fund v. Precise Brick, Inc., No. 08-CV-4362(CBA)(CLP), 2009 WL 4891821, at * 4 (E.D.N.Y. Dec. 17, 2009) (finding liability under ERISA where a complaint alleged that an employer violated the terms of a CBA by not making payments to covered funds); La Barbera v. Federal Metal & Glass Corp., 666 F. Supp. 2d 341, 348 (E.D.N.Y. 2009).

Here, plaintiffs adequately establish defendant Inniss Construction's liability for failing to make payments to the ERISA funds. The complaint alleges that the Welfare, Pension, and Annuity Funds, the JATC, and the IMI are each "employment benefit plans" and "multiemployer" plans

covered by ERISA. Compl. ¶ 6. Further, plaintiffs allege that Inniss Construction is bound by the CBA, agreed to make contributions to the ERISA funds, and failed to make the required contributions from July 2017 through May 2019. Id. ¶¶ 13-14, 19. Plaintiffs' allegations that Innis Construction violated the CBA and failed to contribute to the ERISA funds, which must be taken as true, satisfy plaintiffs' burden to establish defendant Innis Construction's liability. See La Barbera, 666 F. Supp. 2d at 348 (finding allegations that an employer violated a CBA and the requirements of ERISA to be sufficient to establish liability).

### 2. Other Funds

The LMRA states, in pertinent part, that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce…may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). This provision provides for an employer's liability for failing to remit union dues as required under a CBA. See Bricklayers Ins. & Welfare Fund v. Primo Brick, Inc., No. 11-CV-5742(FB)(LB), 2013 WL 2120338, at *3 (E.D.N.Y. Apr. 3, 2013) [hereinafter Primo Brick] (citing Bricklayers Ins. & Welfare Fund v. Primo Build. Corp., No. 08-CV-4617(MDG), 2012 WL 6043294, at *2 (E.D.N.Y. Sept. 24, 2012)), report and recommendation adopted by 2013 WL 2120318 (E.D.N.Y. May 15, 2013).

In this case, plaintiffs' complaint establishes defendant Inniss Construction's liability under the LMRA for failing to contribute to the other funds. The complaint states that the CBA required Inniss Construction to remit deductions from employee wages as dues owed to Local 1 and the I.U. and that Inniss Construction failed to remit those funds for the period of July 2017 through May 2019. Compl. ¶¶ 15-16. Plaintiffs further allege that they are seeking the remittance of the amounts owed. Id. ¶ 22. These allegations of failure to comply with contractual allegations

sufficiently establish liability under the LMRA. Primo Brick, 2013 WL 2120338, at *3; La Barbera, 666 F. Supp. 2d at 348 (finding that allegations of failure to abide by contractual allegations sufficiently state a claim for relief).

### B.  Liability of Anderson Inniss

Plaintiffs bring claims under ERISA against Anderson Inniss for breach of his fiduciary duty to specific ERISA funds for failing to properly segregate and remit employee contributions to the Vacation Fund and failing to contribute to the IPF, the Pension Fund, and the Annuity Fund. Compl. ¶¶ 24-43. Plaintiffs also assert a state law conversion claim against Anderson Inniss for his failure to remit dues which were deducted from union bricklayers' wages but never provided to the union. Id. ¶¶ 48-50.

### 1.  Specific ERISA Funds

Section 409 of ERISA provides that:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries…shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to any such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate….

29 U.S.C. § 1109(a). An individual defendant may be personally liable under this section of ERISA when plaintiffs show that unpaid contributions are plan assets and that the defendant had a sufficient level of control over those assets to make him a fiduciary. Bricklayers Ins. & Welfare Fund v. McGovern & Co., LLC, No. 17-CV-6067(SJ)(ST), 2019 WL 2271942, at *7 (E.D.N.Y. Mar. 6, 2019) (quoting In re Halpin, 566 F.3d 286, 289 (2d Cir. 2009), Report and Recommendation adopted by, 2019 WL 1772399 (E.D.N.Y. Apr. 23, 2019). When an employer withholds a portion of wages as contributions to vacation and pension funds, those amounts are

considered plan assets of an ERISA employee welfare fund. Id. (citing Bricklayers Ins. V. FJW, Inc., No. 15-CV-887(SJ)(SMG), 2016 WL 4691293, at *3 (E.D.N.Y. Aug. 19, 2016), adopted sub nom. Bricklayers. Ins. & Welfare Fund v. FJW, Inc., 2016 WL 4688857 (E.D.N.Y. Sept. 7, 2016)); 29 C.F.R. § 2510.3-102(a) (defining plan assets under ERISA). However, absent a specific agreement between an employer and employees, employer contributions due but not yet paid to a fund are not considered plan assets but rather ordinary debts. Sullivan v. United Const. Field, Inc., No. 12-CV-682(ENV)(VVP), 2015 WL 4040417, at *2 (E.D.N.Y. June 30, 2015) (citing In re Halpin, 566 F.3d 289). An agreement between an employer and employees specifying that contributions presently owed to a fund will be considered held in trust for the employees is sufficient to render the unpaid contributions "plan assets" protected by ERISA. Id. at *3; see also McGovern & Co., LLC, 2019 WL 2271942, at *7 (citing United States v. Panepinto, 818 F. Supp. 48, 51 (E.D.N.Y. 1993)). More specifically, and relevant here, language in an employment agreement stating "that the 'Title to all monies paid into and/or due and owing the Trust Fund shall be vested in and remain exclusively in the Trustees of the Fund'" has previously been found to transform unpaid benefit contributions into plan assets. FJW Inc., 2016 WL 4691293, at *3. Finally, in determining whether a defendant is a fiduciary of a plan, and therefore liable under Section 409 of ERISA for a breach of a fiduciary duty, the Court must consider "whether 'defendant was responsible for authorizing and making payments to' an employee benefit plan." Id. (quoting Pension Benefit Guar. Corp. v. Solmsen, 671 F. Supp. 938, 944 (E.D.N.Y. 1987)).

The complaint clearly establishes Anderson Inniss' personal liability under ERISA. It states that Mr. Inniss failed to segregate the after-tax employee contributions to the Vacation Fund and remit them to the Welfare Fund, instead comingling them with other assets of Inniss Construction. Compl. ¶¶ 25-27. The agreements between Inniss Construction and plaintiffs

governing contributions to the IPF, the Pension Fund, and the Annuity Fund, all include similar language stating in substance that "Title to all monies paid into and/or due and owing the Trust Fund shall be vested in and remain exclusively in the Trustees of the Fund."[4] Id. ¶¶ 30, 35, 40. Mr. Inniss is alleged to "manage[] the day to day activities and payrolls of Inniss Construction," including determining when to make contributions to the funds. Id. ¶¶ 31, 36, 41. This allegation demonstrates that Mr. Inniss acted as a fiduciary. See FJW Inc., 2016 WL 4691293, at *3 (quoting (quoting Pension Benefit Guar. Corp., 671 F. Supp. at 944). Further, Mr. Inniss failed to make the contributions required under the agreement with the plaintiffs. Id. ¶¶ 32, 37, 42. These allegations sufficiently establish Mr. Inniss' personal liability under ERISA for the delinquent contributions to the Vacation Fund, the IPF, the Pension Fund, and the Annuity Fund.

## 2. Conversion

Under New York Law, the tort of conversion requires a finding that "a defendant exercise[d] unauthorized dominion over personal property in interference with a plaintiff's legal title or superior right of possession." McGovern & Co., LLC, 2019 WL 2271942, at *9 (internal quotation marks omitted) (quoting LoPresti v. Terwilliger, 126 F.3d 34, 41 (2d Cir. 1997)). A person is liable for conversion of money when he fails to meet "an obligation to return or otherwise treat in a particular manner the specific money in question." See id. (internal quotation marks omitted) (quoting LoPresti, 126 F.3d at 41)).

Here, the complaint adequately alleges Mr. Inniss' liability for conversion of the unremitted union dues. Plaintiffs allege that "Mr. Inniss directed that…dues deductions be taken

---

[4] The language in the various agreements governing the funds differs slightly. The Agreement and Declaration of Trust of the IPF refers to monies due to "the Trust Fund" being vested "in the Trustees of the Fund" and both the Pension and Annuity Plan of the Pension Fund and the Supplemental Annuity Plan of the Annuity Fund refer to "monies due to the 'Fund' being vested 'in the Trust of the Fund.'" Compl. ¶¶ 30, 35, 40. This difference does not materially alter the effect of the language in each agreement.

from the paychecks of Local 1 members for hours worked by Local 1 bricklayers between July 2017 and May 2019" and that rather than "segregate the dues and remit them to Local 1," Mr. Inniss "commingled them with Inniss Construction's general assets." Compl. ¶ 49. Such allegations are sufficient to establish his liability for conversion and justify an award of damages to plaintiffs.

### III.    Damages

It is well established that a default, is "deemed to constitute a concession of all well pleaded allegations of liability," but it is "not considered an admission of damages." Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012) (internal quotation marks and citation omitted); see also Credit Lyonnais Secs. (USA), Inc., 183 F.3d at 155 ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true."). On a motion for a default judgment, a plaintiff has the burden to prove damages to the Court with a "reasonable certainty." Credit Lyonnais Secs. (USA), Inc, 183 F.3d at 155 (citing Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111). The Court, however, does not need to hold a hearing, as "detailed affidavits and documentary evidence" may be sufficient. Cement & Concrete Workers Dist. Council Welfare Fund, 699 F.3d at 234 (citing Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991)).

In ERISA cases seeking an award of damages after a finding of liability, Courts frequently rely solely on the affidavits, reports, and other documentary evidence submitted by plaintiffs. See e.g., McGovern & Co., LLC, 2019 WL 2271942, at *3 (listing the copious documentary evidence supporting plaintiffs' damages request, including declarations, shop steward reports, and rate

schedules); Primo Brick, 2013 WL 2120338, at *4 (finding a hearing on damages unnecessary when plaintiffs provided multiple affirmations and additional documentary evidence); Precise Brick, Inc., 2009 WL 4891821, at *6 ("[W]here the plaintiffs have filed reasonably detailed affidavits and exhibits pertaining to the damages incurred…the Court can make an informed recommendation regarding damages without and evidentiary hearing."). Here, plaintiffs' motion is accompanied by, among other documents, the declaration of the President of the International Union of Bricklayers and Allied Craft Workers Local No. 1, Jack Argila (Argila Dec., ECF No. 21-2); the declaration of Viorel Kuzma, a staff member of the Payroll Compliance Department at the accounting firm Schulthies and Panettieri, LLP (Kuzma Dec., ECF No. 21-3); the affirmation of plaintiffs' counsel Michael Minnefor (Minnefor Aff., ECF No. 21-4); and an audit report prepared by Schulthies and Panettieri, LLP documenting the period July 21, 2017 through December 31, 2018 (Ex. E, ECF No. 21-11). Plaintiffs later supplemented their filing with a second audit report documenting the period of January 1, 2019 through June 30, 2020 (Suppl. Mot. Ex. B, ECF No. 30-3). A supplemental declaration from Viorel Kuzma explains the effect of the settlement with defendant Hudson on the relief plaintiffs seek (Suppl. Kuzma Dec., ECF No. 30-1). This documentary evidence permits the Court to calculate an appropriate damage awards without the need for a hearing.

## A.    Damages – Inniss Construction

Plaintiffs seek to recover unpaid contributions and other amounts owned to the ERISA and Other Funds. Pls.' Mot. 8; Suppl. Mot. 1. Section 502 of ERISA provides:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan–
>
> (A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of–

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. 1132(g)(2). Recovery of amounts owed to the Other Funds are governed by the CBA and any of the parties' other agreements. McGovern & Co., LLC, 2019 WL 2271942, at *4 (citing Finkel v. Triple A. Group, Inc., 708 F. Supp. 2d 277, 284 (E.D.N.Y. 2010)).

## 1. Delinquent Contributions

Plaintiffs initial motion for a default judgment sought recovery of delinquent contributions required under the CBA to both the ERISA funds and the other Funds for the period of July 21, 2017 through December 31, 2018. Pls.' Mot. 8. Plaintiffs' supplement, filed after the settlement with Hudson, seeks additional delinquent contributions covering the period January 1, 2019 through June 30, 2020. Suppl. Mot 1-2. The declarations of Viorel Kuzma and the audit reports provided by plaintiffs state that Inniss Construction's unpaid contributions to the ERISA funds and the other funds total $93,305.92 for the period of July 21, 2017 through December 31, 2018 and $18,078.32 for the period January 1, 2019 through June 30, 2020. Kuzma Dec. ¶ 9; Pl's Mot., Ex. E, at 17; Suppl. Kuzma Dec. ¶ 5; Suppl. Mot. Ex. B, at 2. These amounts, which plaintiffs seek to recover, were calculated by multiplying the hours worked by the covered union employees by the rates in effect for contribution to each fund. Kuzma Dec. ¶ 10; Ex. E, at 15-17. The results of these calculations are as follows:

| AUDIT PERIOD: JULY 21, 2017 – DECEMBER 31, 2018 | |
|---|---|
| **ERISA Funds** | **Amount Due** |
| International Pension Fund | 3,836.63 |
| New York Pension Fund | 18,542.55 |
| Insurance & Welfare Fund | 25,558.65 |
| Supplemental Annuity Fund | 17,540.25 |
| International Masonry Institute | 2,301.98 |
| J.A.T.C. | 250.58 |
| Vacation Fund | 12,528.75 |
| IPF PPA Special Assessment | 1,907.43 |
| | |
| Total Due | 82,466.82[5] |
| | |
| **Other Funds** | **Amount Due** |
| Labor Management Relations Comm. | 501.15 |
| ABMC | 0.00 |
| Local# 1 Dues Check-Off | 2,676.38 |
| I.U. Dues Check-Off | 2,271.63 |
| Defense Fund | 425.98 |
| I.U. Bac Pac | 127.89 |
| Local Bac Pac | 75.17 |
| Job Target Fund | 4,760.93 |
| BAC LOCAL 1 (LMRC) | 0.00 |
| | |
| Total Due | 10,839.12 |
| Grand Total | 93,305.94 |

Suppl. Mot., Ex. A.

| AUDIT PERIOD: JANUARY 1, 2019 – JUNE 30, 2020 | |
|---|---|
| **ERISA Funds** | **Amount Due** |
| International Pension Fund | 727.50 |
| New York Pension Fund | 3,589.00 |
| Insurance & Welfare Fund | 4,947.00 |
| Supplemental Annuity Fund | 3,414.50 |
| International Masonry Institute | 436.50 |
| J.A.T.C. | 48.50 |
| Vacation Fund | 2,444.50 |
| IPF PPA Special Assessment | 378.91 |
| | |

---

[5] This amount differs slightly from plaintiffs' calculation. The Court calculated the total due was $82,466.82 not $82,466.80.

| Total Due | 15,986.41 |
|---|---|
|  |  |
| **Other Funds** | **Amount Due** |
| Labor Management Relations Comm. | 97.00 |
| ABMC | 0.00 |
| Local# 1 Dues Check-Off | 593.83 |
| I.U. Dues Check-Off | 432.43 |
| Defense Fund | 82.45 |
| I.U. Bac Pac | 24.25 |
| Local Bac Pac | 14.55 |
| Job Target Fund | 847.40 |
| BAC LOCAL 1 (LMRC) | 0.00 |
| Retirement Fund | 0.00 |
|  |  |
| Total Due | 2,091.91 |
| Grand Total | 18,078.32 |

Suppl. Mot., Ex. B.

Before addressing the proper award for delinquent contributions, the Court notes that the second audit period, January 1, 2019 through June 30, 2020, extends past the date this action was filed, December 18, 2019. The demand in plaintiff's supplement for damages incurred after the case's filing date implicates Federal Rule of Civil Procedure 54(c). See also, Triple A. Group, Inc., 708 F. Supp. 2d at 282. The Rule states that "[a] default judgment must not differ in kind, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c). However, Rule 54(c) is not violated when the complaint provides notice to a defendant that plaintiff may seek damages accruing during the pendency of the litigation. Triple A. Group, Inc., 708 F. Supp. 2d at 282 (citing King v. STL Consulting, LLC, No. 05-CV-2719(SJ), 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006)). Here, the demand for relief in the complaint states that plaintiff is seeking unpaid contributions, including "unpaid contributions that should accrue during the pendency of this litigation, including any amounts found due and owing in connection with an updated audit of Defendants' books and records." Compl. wherefore cl. 1(a). In their supplemental motion, plaintiffs point out that, although Inniss Construction has failed to appear in this matter, it did

cooperate with the second audit and is on notice of the possible damages which may be awarded. Suppl. Mot. 2 n.1. Therefore, an award of unpaid contributions for a period which post-dates the filing of the complaint is appropriate.

The Court has reviewed the calculations contained in the audit reports and finds that they adequately support the amount in unpaid contributions sought by plaintiffs.[6] However, although plaintiffs report that the amount sought for the first audit period is $93,305.92, the Court finds that this amount is two cents lower than the sum of the amounts due to all of the funds.[7] Based upon the exhibits and figures provided by plaintiffs, the correct amounts due are $93,305.94 for the first audit period and $18,078.32 for the second audit period. Given plaintiffs' auditor's repeated use of the lower amount of $93,305.92 in its calculations, the Court accepts this figure as the amount of unpaid contribution due for the first audit period. As explained in plaintiffs' supplemental filings, the unpaid contribution amounts must be reduced to account for the settlement with the Hudson defendant. Suppl. Mot. 1-2; Suppl. Kuzma Decl. ¶¶ 4-5. This is because a large portion of the unpaid amounts during each audit period are attributable to the Schiff House Daycare Renovation project for which Hudson supplied a payment bond. Suppl. Mot. 1. The Hudson settlement covered the following amounts: $83,695.16 for the first audit period; $13,356.45 for the second audit period. Suppl. Mot. 1-2; Suppl. Kuzma Dec. ¶¶ 4-5. When those amounts are

---

[6] In addition to the audit report, Ex. E; ECF No. 21-11, and the Kuzma Declaration, ECF No. 21-3, plaintiffs also provide several "Notice to Employer" documents which state the hourly contribution rates for each fund during the time period in question, Ex F; ECF 21-12. The hourly rates stated for "Local# 1 Dues Check-Off" provided in the "Notice to Employers" documents differ from the rates used in the audit report to calculate the amount due in delinquent contributions. Compare Ex. E with Ex. F. For example, the "Notice to Employers" document pertaining to the period of July 1, 2017 through June 30, 2018 states an hourly rate of "2.96 per hour" for the "Local# 1 Dues Check Off" but the audit report for this same time period states 1.06 for the "Local# 1 Dues Check Off" contribution rate. Compare Ex. E; ECF No. 21-11, at 15 with Ex. F, ECF No 21-13, at 3. The Court resolved this discrepancy by referring to the CBA itself which proscribes the formula for determining the contribution rate for the Local# 1 Dues Check Off. See Ex. A; ECF 21-7, at 7, 34. After using the formula provided in the CBA in conjunction with the total gross wages included on the "Notice to Employer" documents for the time period at issue, the rate determined using the formula provided in the CBA appears to be the same rate used in the audit. The Court is satisfied that the audit report correctly reflects the amount due in unpaid contributions.

[7] This discrepancy appears to be due to a miscalculation of the total due to the ERISA funds for the first audit period.

deducted from the overall amount of unpaid contributions, Inniss Construction owes plaintiffs $9,610.76 for the first audit period and $4,721.87 for the second audit period. These amounts total $14,332.63. Suppl. Mot. 2; Suppl. Kuzma Decl. ¶ 7. Accordingly, plaintiffs should be awarded $14,332.63 in unpaid contributions.

**2. Interest**

Plaintiffs also request interest on the unremitted dues payments to the other funds and unpaid ERISA fund contributions pursuant to Section 502 of ERISA. Pls. Mot. 10-11. They claim that the amount of interest due for the first audit period is $28,528.60 and $2,709.27 for the second audit period. Suppl. Mot. 3-4; Suppl. Kozuma Decl. ¶¶ 11-12. ERISA provides that the interest rate on unpaid ERISA fund contributions is the rate provided in the CBA. 29 U.S.C. 1132(g)(2). Here, the CBA provides that an interest rate of 10% shall be used to calculate the interest due on delinquent ERISA contributions and unremitted union dues. Pls. Mot. 10; Argila Dec. ¶ 15; Kuzma Decl. ¶ 25; Ex. A, ECF No. 21-7, at 11; Suppl. Kozuma Dec. ¶ 11. Plaintiffs state that the interest for the first audit period began to accrue on March 10, 2018, the midpoint of July 17, 2017 through December 31, 2018. Pls.' Mot. 10 n.6. Interest for the second audit period began to accrue on September 30, 2019, the midpoint of the second period of January 1, 2019 through June 30, 2020. Suppl. Kozuma Decl. ¶ 12. This is reasonable because, "New York law permits the accrual of pre-judgment interest from a 'single reasonable intermediate date' when damages are incurred over a period of time." Triple A. Group, Inc., 708 F. Supp. 2d at 287 (citing N.Y. C.P.L.R. § 5001(b)). Plaintiff's auditor states that obtaining the correct interest amount requires multiplying the total unpaid contribution amount by 10%, dividing by 365, and then multiplying by the number of days from the midpoint of the audit period to March 29, 2021, the date plaintiff's claim for breach of the payment bond was resolved. Suppl. Kozuma Decl. ¶ 11. The Court will conduct these

17

calculations but will calculate the interest due through the date of this Report. See Triple A. Group, Inc., 708 F. Supp. 2d at 287-88.

The amount of interest due for the first audit period, is $33,355.80. This amount was determined by taking the amount of unpaid contributions ($93,305.92), multiplying by 10%, dividing by the number of days in the year (365), and then multiplying by the number of days (1305) between March 10, 2018 and the date of this Report, October 5, 2021. This amount will increase by $25.56 each day until the entry of judgment.

The amount of interest due for the second audit period, is $3,643.20. This amount was determined by taking the amount of unpaid contributions ($18,078.32), multiplying by 10%, dividing by the number of days in the year (365), and then multiplying by the number of days (736) between September 30, 2019 and the date of this Report, October 5, 2021. This amount will increase by $4.95 each day until the entry of judgment.

I therefore recommend that plaintiffs should be awarded interest of $33,355.80 plus $25.56 for each day until the entry of judgment to satisfy the first audit period and $3,643.20 plus $4.95 each day until the entry of judgment to satisfy the second audit period.

**3. Liquidated damages**

ERISA permits the recovery of an amount not to exceed the greater of the interest on the unpaid contributions or liquidated damages as specified under the plan in an amount no greater than 20% of the unpaid contributions. 26 U.S.C. § 1132(g)(2); see also Triple A. Group, Inc., 708 F. Supp. 2d at 289. Here, the CBA provides that in the event "litigation is instituted," the employer shall be liable for liquidated damages of 20%. Suppl. Mot. 3; Suppl. Kozuma Decl. ¶ 14. The ERISA funds were due $82,466.80 in unpaid contributions for the first audit period and $15,986.41

for the second audit period, Mot to Suppl., Ex. A & B, for a total of $98,453.21. The ERISA funds are entitled to $19,690.64 ($98.453.21 x 20%) as liquidated damages.

Accordingly, I recommend that the ERISA funds should be awarded $19,690.64 as liquidated damages.

**B.      Anderson Inniss**

After accounting for the settlement of plaintiffs' claims against Hudson Insurance, plaintiffs allege that Mr. Innis owes the following amounts in deductions and unremitted dues checkoffs for hours worked by Local 1 bricklayers during the First and Second Audit periods:

1.   Vacation Fund Deductions: $1,914.57
2.   Contributions to the IPF, Pension Fund and Annuity Fund: $6,568.58
3.   Unremitted Dues Check Offs: $1,553.63

Total owed by Mr. Inniss: $10,036.78.

Suppl. Mot. 2. These amounts are supported by plaintiffs' auditor's declaration. Suppl. Kuzma Decl. ¶¶ 8-10. It is recommended that plaintiffs should be awarded $10,036.78, the total amount of unremitted dues and contributions owed by Mr. Inniss. See McGovern & Co., LLC, 2019 WL 2271942 (recommending that plaintiffs' conversion claim be granted, and defendant fiduciary be ordered to pay plaintiffs the cost of unremitted dues for which he was personally liable.).[8] Mr. Inniss and Inniss Construction are jointly and severally liable for this amount. See Mason Tenders Dist. Council Welfare Fund v. Precise Brick Inc., No. 08 Civ. 8373(SHS), 2009 WL 1675399, at *2 (S.D.N.Y. June 15, 2009) (citing In Re WorldCom, Inc. ERISA Litigation, 339 F. Supp. 2d 561, 568 (S.D.N.Y. 2004)).

---

[8] This was the amount reported by auditor Viorel Kuzma as being owed by Mr. Inniss after accounting for settlement of $97,051.61 with Hudson for funds attributable to the Schiff House Project. Suppl. Kuzma Decl. ¶ 6. The Court was unable to verify from the papers provided the exact amounts recovered in Vacation Funds, Contributions to the IPF, Pension Fund, and Annuity Fund and Unremitted Dues Check Offs from the Schiff House Project.

**C. Attorney's Fees and Costs**

Pursuant to Section 502 of ERISA 29 U.S.C. § 1132(g)(2)(D), the court may allow "reasonable attorney's fee and costs of action to either party." Plaintiffs submitted an affidavit from plaintiffs' counsel Michael Minnefor stating that the recoverable cost for filing the complaint is $400.00, Minnefor Aff. ¶ 7, but do not provide a receipt for this expense. Nonetheless, the Court may take judicial notice of the filing fee in this district and verify payment of the fee by consulting the docket. Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs v. Coastal Envtl. Grp Inc., No. 18-CV-5791(LDH)(SJB), 2019 WL 5693916, at *12 (E.D.N.Y. Aug. 30, 2019) (citing Shalto v. Bay of Bengal Kabob Corp., No. 12-CV-920, 2013 WL 867420, at *2 (E.D.N.Y. Mar. 7, 2013) Report and Recommendation adopted, Order (E.D.N.Y. Mar. 31, 2020). Here, the docket reflects payment of the $400 filing fee. Accordingly, I recommend that plaintiffs should be awarded costs of $400.

Under ERISA 29 U.S.C. § 1132(g)(2)(D), the court may allow "reasonable attorney's fee and costs of action to either party." Plaintiffs have not provided any information regarding attorney's fees, nor have plaintiffs suggested an amount being sought. In the absence of any information regarding tasks performed or services rendered, the Court declines to recommend an award of attorney's fees. See Precise Brick, Inc., 2009 WL 4891821 * 6 (declining to recommend an award of attorney's fees where plaintiffs did not provide information regarding attorney's fees "other than conclusory statements that plaintiffs are entitled to reasonable attorney's fees").

## IV.     Injunctive Relief

Pursuant to Section 502 of ERISA, 29 U.S.C. § 1132(a)(3)(B), a party bringing ERISA claims may seek to obtain equitable relief to redress violations or enforce plan provisions. In addition to monetary damages, the court may award "such other legal or equitable relief as the [C]ourt deems appropriate." 29 U.S.C. § 1132(g)(2)(E). "[W]here defendant is in default and where the applicable statute provides for injunctive relief as a possible remedy, the court may issue an injunction provided that plaintiffs meet the requirements for obtaining a permanent injunction, which include a showing of 'irreparable harm should the injunction not be granted.'" La Barbera, 666 F. Supp. 2d at 349–50 (internal quotation marks omitted) (quoting King v. Nelco Indus. Inc., No. 96-CV-4177, 1996 WL 629564, at *1 (E.D.N.Y. Oct. 23, 1996)). However, "the time period of the records reviewed in the audit must . . . be limited to the period during which the employer was bound by the CBA." McGovern & Co., LLC, 2019 WL 2271942, at *6.

Pursuant to the CBA, plaintiffs claim to be entitled to an "audit in connection with Inniss Construction's obligation to make contributions and remit dues," and therefore "demand an order requiring Inniss Construction to permit and cooperate" with an audit of books and records for weeks worked by Local 1 bricklayers. Compl. ¶¶ 53-54. Plaintiffs claim that they would suffer "irreparable harm if Inniss Construction were permitted to evade its obligation to submit to an audit." Id. ¶ 53.

Plaintiffs have conducted audits of defendants' books and records for hours worked by Local 1 bricklayers between July 21, 2017, and June 30, 2020. Suppl. Mot. Ex. A & B. The parties' Collective Bargaining Agreements cover the periods of time worked between July 1, 2015, and June 30, 2018, as well as July 1, 2018, and June 30, 2021. Trade Agreement at 2-78,

ECF No. 21-7. To the extent that these records are not sufficient to assess contributions owed to the Funds and the Union for hours worked by Local 1 Bricklayers, this Court recommends that plaintiffs' request that defendants be ordered to submit to an audit for hours worked by Local 1 bricklayers through June 30, 2021, should be granted. See La Barbera, 666 F. Supp. 2d at 349–50 (recommending that, where defendant had defaulted and refused to "submit to the requested audit," plaintiffs' request for an audit within 30 days of the adoption of the Report and Recommendation be granted); see also McGovern & Co., LLC, 2019 WL 2271942, at *7 (recommending that an injunction be issued requiring defendants to submit to an audit under the terms described in the CBA, and recommending that plaintiffs be allowed to "supplement their motion for default judgment to request such additional damages within thirty (30) days of completion of the audit."). Accordingly, I recommend that plaintiffs' request for injunctive relief should be granted.

## CONCLUSION

It is respectfully recommended that plaintiffs' motion for a default judgment should be granted. As against defendant Inniss Construction, plaintiffs should be awarded: $14,332.63 in unpaid contributions to the ERISA and other funds; interest of $33,355.80 plus $25.56 for each day until the entry of judgment to satisfy the first audit period and $3,643.20; plus $4.95 each day until the entry of judgment to satisfy the second audit period; and $19,690.64 as liquidated damages. As against defendant Anderson Innis, plaintiffs should be awarded $10,036.78. Plaintiffs should also be awarded $400 in costs. The Court should also issue an injunction requiring defendants to submit to an audit for hours worked by Local 1 bricklayers through June 30, 2021.

**FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

                                                    _____/S/_____
                                                    LOIS BLOOM
                                                    United States Magistrate Judge

Dated:  October 5, 2021
          Brooklyn, New York

23